**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JUAN TURNER,

               Petitioner,

     v.

JEFFREY CHIESA, et al.,

             Respondents.

Civil Action No. 12-5224 (JBS)

**OPINION**

**APPEARANCES**:

        JUAN TURNER, 639531C
        New Jersey State Prison
        P.O. Box 861
        Trenton, New Jersey 07101
            *Petitioner Pro Se*

        ESSEX COUNTY PROSECUTOR
            by:  Lucille M. Rosano, Esq.
        50 West Market Street
        Newark, New Jersey 07102
            *Attorneys for Respondents*

**SIMANDLE, Chief Judge**

     Juan Turner filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 challenging a judgment of conviction filed in the Superior Court of New Jersey, Law Division, Essex County, on September 27, 2004.  The State filed an Answer with the record and Turner filed a Reply.  After carefully reviewing the arguments of the parties and the state court record, this Court will deny the Petition with prejudice and deny a certificate of appealability.

# I.  BACKGROUND

## A.  The Crimes

Turner challenges a sentence of life with an 85% period of parole ineligibility imposed after a jury found him guilty of the first-degree murder of Dickens Baptiste, third-degree unlawful possession of a handgun, and second-degree possession of a handgun for an unlawful purpose. Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), state court factual findings are presumed correct unless rebutted by clear and convincing evidence.   See 28 U.S.C. § 2254(e)(1).   As Turner has not attempted to rebut the factual findings of the New Jersey courts with respect to the crime, this Court will rely on those findings.   The Appellate Division found the following facts with respect to the murder of Baptiste:

> Defendant's conviction stems from the fatal shooting of Dickens Baptiste, a/k/a "Little Bloody", in the early morning hours of July 16, 2003. Defendant was riding in a van driven by Jihad Glover.   Jazaar Redding, Eugene Woodson, and possibly one other person, were also in the van. Defendant and Glover were affiliated with the Crips street gang.  Glover testified at trial that defendant became very upset that evening when Glover reported there had been a shooting, which report led defendant to believe his cousin, Rasheed Brown, had been shot.
>
> Glover then drove the van to a gas station, where Baptiste, who had arrived there on a bicycle, approached Redding.   Redding knew Baptiste from the neighborhood and that the red headband Baptiste wore signified that he was a member of the rival Bloods street gang.   After the men exchanged some words, Redding reentered the van as Baptiste rode away on his bicycle.   Defendant saw Baptiste, and when Redding returned to the van, defendant asked, "[W]hy we let 'em go?"  He also stated, "I wanna push 'em." Glover testified this was street slang meaning, "I'm gonna kill him."
>
> As the van prepared to leave the gas station, defendant exited it and ran in the direction that Baptiste rode away.   Defendant came upon Baptiste who was stopped, trying to fix the chain on his bicycle which had come off.   Defendant fired a single shot at close range into Baptiste's chest, got back into the van and told the others, "[d]on't nobody say nothing about this."   Glover dropped off one of his

2

passengers, who received a ride home from someone else, and then drove everyone else home.   Baptiste died from his wound.

Subsequently, the police reviewed a videotape from a surveillance camera at the gas station with footage from the night of the incident and were able to identify the van, which either Glover or someone in his family owned.   Eventually, the police identified Glover, Redding and Woodson in their investigation.   Ostensibly based on interviews with these individuals and the statements they provided, the police arrested and charged defendant with the homicide of Baptiste.

The State's case ultimately rested on the testimony of Glover, Redding and Woodson, all of whom testified that they saw defendant shoot Baptiste.   No weapon was ever recovered and no forensic evidence linked defendant to the crime. Defendant did not testify, but produced Kason Miles, who testified that Glover told him that a person known as "Little D" shot a person named "Little Bloody." Glover denied ever relating to anyone this version of what happened and denied knowing Miles.

State v. Turner, 2011 WL 3107785 at *1 (N.J. Super. Ct., App. Div., July 27, 2011), certif. denied, 209 N.J. 98 (2012) (table).

## B.    The State Court Proceedings

After a jury found Turner guilty of first-degree murder, third-degree unlawful possession of a handgun, and second-degree possession of a handgun for an unlawful purpose, on September 27, 2004, the trial judge imposed an aggregate sentence of life in prison with an 85% period of parole ineligibility.   Turner appealed and on September 14, 2007, the Appellate Division affirmed the conviction and sentence.   See State v. Turner, 2007 WL 2682587 (N.J. Super. Ct., App. Div., Sept. 14, 2007).   On November 20, 2007, the New Jersey Supreme Court denied certification. See State v. Turner, 193 N.J. 223 (2007) (table).

On January 29, 2008, Turner filed a petition for post-conviction relief.   On August 7, 2009, in an opinion from the bench and a written order the trial judge denied relief without an evidentiary hearing.   (ECF Nos. 12-10, 12-31.)   Turner appealed and on July 27, 2011, the Appellate

3

Division affirmed.   See State v. Turner, 2011 WL 3107785 (N.J. Supr. Ct., App. Div., July 27,

2011).   The New Jersey Supreme Court denied certification on January 13, 2012.   See State v.

Turner, 209 N.J. 98 (2011) (table).

**C.   Procedural History of § 2254 Petition**

On August 15, 2012, Turner signed his Petition for a Writ of Habeas Corpus and

presumably handed it to prison officials for mailing to the Clerk.   (ECF No. 1.)   The Petition

raises the following grounds:[1]

> Ground One:   [THE] TRIAL JUDGE ERRED IN DENYING THE DEFENSE
> REQUEST FOR A MISTRIAL AFTER HE MISINFORMED THE JURY AS TO
> WHAT THE DEFENSE ATTORNEY HAD SAID IN HIS SUMMATION.
>
> Ground Two:   THE JUDGE ERRED IN DENYING THE DEFENSE MOTION
> FOR A NEW TRIAL AS THE VERDICT RENDERED BY THE JURY WAS
> AGAINST THE WEIGHT OF THE EVIDENCE.
>
> Ground Three:   THE DEFENDANT'S SENTENCE IS EXCESSIVE.
>
> Ground Four:   NUMEROUS ERRORS BY THE COURT AND MISCONDUT
> BY THE PROSECUTOR DURING THE COUSE OF PROCEEDINGS ROSE TO
> THE LEVEL OF DEPRIVING DEFENDANT OF HIS U.S.C.A. SIXTH
> AMENDMENT RIGHT TO A FAIR TRIAL AND HIS FOURTEENTH
> AMENDMENT RIGHT TO DUE PROCESS.
>
>> (A) THE COURT[']S FAILURE TO GRANT DEFENSE APPLICATION
>> FOR A MISTRIAL RENDERED THE TRIAL UNFAIR AND DEPRIVED
>> DEFENDANT OF HIS RIGHT TO DUE PROCESS.
>>
>> (B) THE COURT[']S FAILURE TO TAKE REMEDIAL ACTION WITH
>> RESPECT TO THE PROSECUTOR[']S IMPROPER IMPEACHMENT
>> OF KASON MILES DURING SUMMATION CONSTITUTED PLAIN
>> ERROR [AND] RENDERED THE TRIAL UNFAIR.

---

[1] This Court notified Turner of his rights to amend the Petition to include all available federal
claims in accordance with Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000).   [ECF No. 3].

Ground Five:  THE DENIAL OF DEFENDANT'S PCR PETITION MUST BE REVERSED AND THIS MATTER MUST BE REMANDED FOR AN EVIDENTIARY HEARING BECAUSE DEFENDANT ESTABLISHED A PRIMA FACIE CASE OF TRIAL COUNSEL'S INEFFECTIVENESS

(A) TRIAL COUNSEL FAILED TO PRODUCE EXCULPATORY WITNESSES INCLUDING AN ALIBI WITNESS.

(B) TRIAL COUNSEL FAILED TO INVESTIGATE AND/OR TO CONSULT ADEQUATELY WITH DEFENDANT.

Ground Six:  DEFENDANT WAS THE SUBJECT OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

Ground Seven:  POST-CONVICTION RELIEF COUNSEL FAILED TO ADVANCE AND THE POST-CONVICTION RELIEF COURT FAILED TO ADDRESS ALL THE ISSUES RAISED IN DEFENDANT'S PETITION DEPRIVING DEFENDANT OF A FULL FAIR HEARING.

Ground Eight:  DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF TRIAL AND PCR COUNSEL[] IN VIOLATION OF U.S. CONST. AMEND[MENTS] VI, XIV.

Ground Nine:  THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DENIED DEFENDANT HIS RIGHT TO REPRESENT THE TRUTH OF THE RECORD AND AN EVIDENTIARY HEARING.

(ECF No 1 at 9, 11, 13, 14, 17, 22, 28, 29, 31.)

The State filed an Answer arguing that Turner failed to exhaust and procedurally defaulted certain claims and that he is not entitled to habeas relief on the merits.  (ECF No. 12.)  Turner filed a Reply.  (ECF No. 15.)

## II.   STANDARD OF REVIEW FOR RELIEF UNDER § 2254

Section 2254 of title 28 of the United States Code sets limits on the power of a federal court to grant a habeas petition to a state prisoner.  See Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011).  Section 2254(a) permits a court to entertain only claims alleging that a person is in state

custody "in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2254(a).   Where a state court adjudicated petitioner's federal claim on the merits,[2] as in this case, a court "has no authority to issue the writ of habeas corpus unless the [state c]ourt's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States', or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Parker v. Matthews, 132 S.Ct. 2148, 2151 (2012) (quoting 28 U.S.C. § 2254(d)).   "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong."   Woods v. Donald, 135 S.Ct. 1372, 1376 (2015).   The petitioner carries the burden of proof, and review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits.   See Pinholster, 131 S.Ct. at 1398.

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court.   See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004). "[C]learly established law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of t[he Supreme Court's] decisions," as of the time of the relevant state-court decision. Woods, 135 S.Ct. at 1376 (quoting White v. Woodall, 134 S.Ct. 1697, 1702 (2014), and Williams v. Taylor, 529 U.S. 362, 412 (2000)).   A decision is "contrary to" a Supreme Court holding within

---

[2] "For the purposes of Section 2254(d), a claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that 1) finally resolves the claim, and 2) resolves th[at] claim on the basis of its substance, rather than on a procedural, or other, ground." Shotts v. Wetzel, 724 F.3d 364, 375 (3d Cir. 2013) (citation and internal quotation marks omitted).

28 U.S.C. § 2254(d)(1) if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result."  Williams, 529 U.S. at 405-06.   Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id., 529 U.S. at 413.

Where a petitioner seeks habeas relief, pursuant to § 2254(d)(2), on the basis of an erroneous factual determination of the state court, two provisions of the AEDPA necessarily apply. First, the AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  29 U.S.C. § 2254(e)(1); see Miller-El v. Dretke, 545 U.S. 231, 240 (2005).   Second, the AEDPA precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

### III.   DISCUSSION

**A.**   **Due Process Claim That Judge Improperly Criticized Defense Counsel (Ground One)**

In Ground One, Turner asserts that the "trial judge erred in denying the defense request for a mistrial after he misinformed the jury as to what the defense attorney had said in his summation." (ECF No. 1 at 9.)   Turner argues that the trial judge interrupted the summation of defense counsel several times in the absence of an objection.   According to Turner, the judge stated that defense counsel was incorrect when counsel said that Kason Miles had given his statement to the police

7

prior to any arrests in the Baptiste shooting.   However, defense counsel was correct since Miles testified that he gave a statement to Detective Brown on July 29, 2003, and Glover and Turner were arrested after July 29, 2003.   Turner further complains that the trial court twice interrupted defense counsel's reference to the charge called false-in-one, false-in-all; the court's stated twice: "I'll tell them what the law is."

Turner raised these arguments on direct appeal, asserting that the false-in-one, false-in-all charge was important to his argument that the three witnesses omitted facts and testified falsely. Turner argued on direct appeal that "the trial judge did what he could to neutralize this portion of the defense.   Given the critical nature of this charge, the judge's mischaracterization of what defense counsel said . . . struck at the heart of the defense."   (ECF No. 12-5 at 12.)   The Appellate Division rejected the claim as follows:

> In his charge, the Judge read to the jury the model criminal jury charge, "False-in-one, False-in-all." Near the end of a day of deliberations, the jury submitted a note which read,
>
>> The defense attorney mentioned in his summation a statement truth in one, truth in all, or something to that effect. Is there such a law? If so, please explain. Thank you.
>
> The following day, the judge advised both attorneys he was going to read the "instruction relating to false-in-one, false-in-all." Neither objected. The judge commenced the re-charge by reiterating that "if [the attorneys] do make statements about the law and they're in conflict with my instructions, then you must disregard them." He then re-read the model criminal jury charge. Finally, the judge noted,
>
>> I trust that that instruction is responsive to what your inquiry is, although the labeling of it by the attorney may not have been consistent with what I previously told you.
>
> The judge then excused the jurors to continue their deliberations.

\*                         \*                         \*

8

It is axiomatic that the court, not counsel, bears the responsibility for providing accurate legal instructions to the jury . . .  We note that the model criminal jury charge does not include the words, "false-in-one, false-in-all," nor does utilizing the verbal short-hand of that maxim accurately convey the substance of the charge. In fact, in this case, the jury's question demonstrates how the use of the phrase alone could cause confusion.

The judge sensed this and tried to dispel any misunderstanding caused by the instructions he was providing, and the label defense counsel attached to it. We cannot conclude that the judge's comments disparaged defense counsel nor did they accuse him of "mislabeling" or misstating the law. Therefore, we conclude that the judge did not mistakenly exercise his discretion by denying the motion for a mistrial, and we find no basis to reverse defendant's conviction on this ground.

Turner, 2011 WL 2682587 at *4 (citation omitted).

This Court notes that when counsel for Turner raised this claim on direct appeal, counsel characterized the claim as an error that is "not of constitutional dimension."  (ECF No. 12-5 at 11.)  Turner's argument before this Court is identical to the argument he raised on direct appeal. This Court has no jurisdiction over a claim that does not assert a violation of federal rights, see Engle, 456 U.S. at 119-20 & n.19 (insofar as petitioners simply challenged the correctness of the self-defense instructions under state law, their petitions alleged no deprivation of federal rights and § 2254 was inapplicable), and it has no power to recharacterize Turner's non-constitutional argument into a constitutional claim.   "[E]rrors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause."  Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997).[3]  "[I]t is well established that a state court's misapplication of its own law does not

---

[3] See also Kontakis v. Beyer, 19 F.3d 110, 116-17 & n.10 (3d Cir. 1994) (where petitioner asserted in § 2254 petition that the exclusion of testimony violated his rights under state law, federal court may not consider ground, not set forth in the petition, that exclusion of the testimony violated his federal due process rights).

generally raise a constitutional claim."   Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997) (citations and internal quotation marks omitted); see also Smith v. Zimmerman, 768 F.2d 69, 71, 73 (3d Cir. 1985).

To be sure, "[a] fair trial in a fair tribunal is a basic requirement of due process."   In re Murchison, 349 U.S. 133, 136 (1955).   However, Turner has not cited a Supreme Court case holding that a trial judge's alleged comments and criticism of defense counsel violate due process and this Court's research reveals no such Supreme Court precedent.   See Johnson v. Carroll, 369 F.3d 253, 262 (3d Cir. 2004) (finding that no Supreme Court case "has held or clearly established that an appearance of bias on the part of a judge, without more, violates the Due Process Clause."); accord Suh v. Pierce, 630 F.3d 685, 692 (7th Cir. 2011); Railey v. Webb, 540 F.3d 393, 414-15 (6th Cir. 2008); Callahan v. Campbell, 427 F.3d 897, 928 (11th Cir. 2005).   Because the Supreme Court has not clearly established that a trial judge's interruption, correction and criticism of defense counsel violates due process, Turner is not entitled to habeas relief on Ground One.

## B.   Due Process Claim Regarding Sufficiency of the Evidence (Ground Two)

Turner asserts in Ground Two that "the judge erred in denying the defense motion for a new trial as the verdict rendered by the jury was against the weight of the evidence."   (ECF No. 1 at 11.)   As factual support, he states that Glover testified at trial that he saw Turner shoot Baptiste, but he had previously told the police that he did not witness the shooting.   In addition, he asserts that the fifth man who was allegedly in the van - Drew - did not testify, the State offered no forensic evidence, such as fingerprints, and neither the gun used in the shooting nor the gun shells were admitted at the trial.

A sufficiency of the evidence claim is governed by Jackson v. Virginia, 443 U.S. 307, 318 (1979).  "[I]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  Id. at 324; accord Coleman v. Johnson, 132 S.Ct. 2060, 2064 (2012) (per curiam); Cavazos v. Smith, 132 S.Ct. 2 (2011) (per curiam); McDaniel v. Brown, 558 U.S. 120, 121 (2010) (per curiam). "[I]t is the responsibility of the jury - not the court - to decide what conclusions should be drawn from evidence admitted at trial."  Cavazos, 132 S.Ct. at 3.  Jackson "requires a reviewing court to review the evidence in the light most favorable to the prosecution.  Expressed more fully, this means a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'"  McDaniel, 130 S. Ct. at 673 (quoting Jackson, 443 U.S. at 326); see also House v. Bell, 547 U.S. 518, 538 (2006) ("When confronted with a challenge based on trial evidence, courts presume the jury resolved evidentiary disputes reasonably so long as sufficient evidence supports the verdict").  "[T]he standard . . . does not permit a court to make its own subjective determination of guilt or innocence."  Jackson at 320, n. 13.

Turner argued on direct appeal that the verdict was against the weight of the evidence where the three alleged eyewitnesses - Redding, Glover and Woodson - all gave prior inconsistent statements to the police.  The Appellate Division rejected the claim as follows:

> Here, the State produced three eyewitnesses to the murder, all of whom knew
> defendant, and all of whom were with him immediately before and after the
> shooting.  Considering this substantial evidence, and the jury's ability to assess

each witness's credibility, we cannot conclude the trial judge committed any error in denying defendant's motion for a new trial.

Turner, 2007 WL 2682587 at *5.

The record establishes that the jury was convinced by the testimony of the three eyewitnesses that Turner shot and killed Baptiste, "and the only question under Jackson is whether that finding was so insupportable as to fall below the threshold of bare rationality.   The state court of last review did not think so, and that determination in turn is entitled to considerable deference under AEDPA, 28 U.S.C. § 2254(d)."   Coleman, 132 S.Ct. at 2065.   It was up to the jury, not this Court, to consider the prior inconsistent statements of these witnesses and to determine the veracity of their testimony.   Affording due respect to the role of the jury and the New Jersey courts under § 2254(d), this Court finds that the evidence "was not nearly sparse enough to sustain a due process challenge under Jackson."   Id.   Turner is not entitled to habeas relief on Ground Two. See Eley v. Erickson, 712 F.3d 837, 847-853 (3d Cir. 2013) (holding that state courts' adjudication of sufficiency of evidence claims was not contrary to, or an unreasonable application of Jackson).

## C.   Excessive Sentence (Ground Three)

Turner claims that the life sentence, which was the maximum term, was excessive where the victim was shot only once, no other violence was involved, this was Turner's first violent crime, and he was only 21 years of age at the time of the murder.   (ECF No. 1 at 13.)   Turner raised this ground on direct appeal and the Appellate Division rejected the claim, finding that "[t]he judge took note of defendant's age; however, he also recognized defendant's prior conviction and his resistance to the court's 'intervention.'"   Turner, 2007 WL 2682587 at *5-*6.

12

Turner's sentence is not unconstitutional.   Absent a claim that a sentence constitutes cruel and unusual punishment prohibited by the Eighth Amendment, or that it is arbitrary or otherwise in violation of Due Process, the legality and length of a sentence are questions of state law over which this Court has no jurisdiction under § 2254.   See Chapman v. United States, 500 U.S. 453, 465 (1991) (holding that under federal law, "the court may impose . . . whatever punishment is authorized by statute for [an] offense, so long as that penalty is not cruel and unusual, and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment"); see also Harmelin v. Michigan, 501 U.S. 957, 994-95 (1991); Wainwright v. Goode, 464 U.S. 78 (1983).   Habeas relief is not warranted on the sentencing claim because the New Jersey courts' adjudication of the claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

**D.       Due Process Claim of Prosecutorial Misconduct (Ground Four)**

Turner argues in Ground Four that prosecutorial misconduct deprived him of a fair trial in violation of Due Process.   He asserts that, although the trial judge ruled that the prosecutor could not cross-examine defense witness Kason Miles about criminal charges pending against him, the prosecutor improperly elicited from Miles on cross-examination that Miles was at the police station as a result of being "locked up" for drug charges when he gave his statement to police.   Turner further contends that the prosecutor improperly argued during his summation that Miles was not credible because he had been arrested for a crime on the same evening he gave his statement to police regarding the murder of Baptiste.   (ECF No. 1 at 15-16.)

"The 'clearly established Federal law' relevant [to a prosecutorial misconduct claim] is [the Supreme Court's] decision in Darden v. Wainwright, 477 U.S. 168 . . . (1986), which

explained that a prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"   Parker v. Matthews, 132 S.Ct. 2148, 2153 (2012) (quoting Darden at 181 and Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).   This occurs only if the misconduct constitutes a "failure to observe that fundamental fairness essential to the very concept of justice."   Donnelly at 64.   It is not enough to show that the prosecutor's conduct was universally condemned.   See Darden at 181.   The quantum or weight of the evidence is crucial to determining whether the prosecutor's statements before the jury were so prejudicial as to result in a denial of due process. Id. at 182; Donnelly, 416 U.S. at 644; accord Moore v. Morton, 355 F.3d 95, 111 (3d Cir. 2001). "On habeas review, however, prosecutorial misconduct . . . does not rise to the level of a federal due process violation unless it affects fundamental fairness of the trial . . .   The relevant question for a habeas court is whether those remarks 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"   Lam v. Kelchner, 304 F.3d 256, 271 (3d Cir. 2002) (quoting Darden, 477 U.S. at 180-81) (citation omitted); accord Parker, 132 S.Ct. at 2153-55.

Turner raised the prosecutorial misconduct claim on direct appeal in his pro se supplemental brief.   The Appellate Division rejected the claim as follows:

> In an exchange with Miles, the prosecutor asked whether he was facing drug charges when he gave his statement to the police. The judge immediately interrupted the questioning, and advised the jury, "That's struck.   Disregard it, ladies and gentlemen."
>
> Outside the presence of the jury, defense counsel moved for a mistrial, noting that the prosecutor's question violated the judge's earlier explicit ruling that forbid inquiry into the nature of the charges Miles was facing.   The judge denied the motion, finding the prosecutor's question to be improper but not in willful violation of the court's earlier ruling.   The judge then agreed to give a curative charge to the jury, but defense counsel, after some consideration, requested that no charge be

given at that time or later.   Rather, he expressed a desire to rely upon general instructions given by the judge as part of his final charge to the jury.

We find no basis to reverse defendant's conviction on these grounds.   The judge immediately issued a curative instruction to the jury and struck the question. Defense counsel, when given the opportunity, declined any further specific instruction.   The exchange simply did not prejudice defendant's case.

Turner, 2007 WL 2682587 at *4.

Given that three eyewitnesses testified that they saw Turner shoot Baptiste and the trial judge immediately instructed the jury to disregard the prosecutor's improper question to Miles, this Court cannot find that the prosecutor's improper reference to Miles' arrest deprived Turner of a fair trial.   The Appellate Division's adjudication of the prosecutorial misconduct claim was not contrary to or an unreasonable application of Darden, Donnelly or other Supreme Court precedent. Turner is not entitled to habeas relief on Ground Four.

**E.      Ineffective Assistance of Trial Counsel (Grounds Five and Six)**

In Ground Five, Turner asserts that trial counsel unconstitutionally failed to produce exculpatory witnesses including an alibi witness and that trial counsel failed to investigate and to adequately consult with him.   In Ground Six, he asserts that trial counsel was constitutionally ineffective in failing to file a motion to suppress the statements of the State's three eyewitnesses due to inconsistencies in their statements, failing to effectively cross-examine the State's witnesses on the basis of inconsistencies, failing to elicit testimony from Glover, Redding and Woodson regarding the absence of Turner in the videotape, failing to call Rasheed Brown, Glory Gonzalez, Fatima Turner, Altariq Highsmith, Wanda Crawford, Mehmet Zor, and Jessica Lyons, failing to ask Detective Wallace why he did not follow up on the lead he received from Altariq Highsmith concerning Jessica Lyons, failing to object to prosecutorial misconduct, failing to object when the

15

trial judge prohibited the prosecutor from calling Officer Elijah James, failing to visit Turner more than once, failing to convey the State's plea offer, failing to present exculpatory witnesses, failing to call a gang intelligence expert, failing to object to the prosecutor's improper questioning, failing to adequately prepare, failing to raise mitigating factors at sentencing, and failing to object to the prosecutor's impeachment of Kason Miles.   He further argues in Ground Six, that counsel on direct appeal was ineffective in failing to argue that the judge abused his discretion in instructing the court reporter to re-read the testimony of Eugene Woodson.   The State argues that Turner is not entitled to habeas relief on his ineffective assistance claims because the adjudication of those claims was not contrary to or an unreasonable application of Supreme Court precedent.

The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense."   U.S. Const. amend. VI.   The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance.   See Strickland v. Washington, 466 U.S. 668, 686 (1984).   A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied.   Id. at 687.   First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness."   Id. at 687-88.   To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."   Id. at 690.   The court must then determine whether, in light of all the circumstances at the time, the identified errors fell "below an objective standard of reasonableness[.]"   Hinton v. Alabama, 134 S.Ct. 1081, 1083 (2014) (per curiam).   The habeas petitioner "bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and

16

that the challenged action was not sound strategy."   Kimmelman v. Morrison, 477 U.S. 365, 381

(1986) (citing Strickland, 466 U.S. at 688-689).   To satisfy the prejudice prong, "a defendant need

not show that counsel's deficient conduct more likely than not altered the outcome in the case."

Strickland, 466 U.S. at 693.[4]   To establish prejudice, the defendant must show that "there is a

reasonable probability that the result of the trial would have been different absent the deficient act

or omission."   Hinton, 134 S.Ct. at 1083.   "When a defendant challenges a conviction, the

question is whether there is a reasonable probability that, absent the errors, the factfinder would

have had a reasonable doubt respecting guilt."   Id. at 1089 (quoting Strickland, 466 U.S. at 695).

Turner raised his ineffective assistance of counsel claims on appeal of the order denying

his post-conviction relief petition.   The Appellate Division held that counsel was not deficient in

failing to challenge the prosecutor's cross-examination of Miles because it had held on direct

appeal that the prosecutor's cross-examination of Miles was not improper.   See Turner, 2011 WL

3107785 at *2 n.1.   The Appellate Division also considered the claims relating to the failure to

call witnesses.   The appellate court found that counsel was not deficient in failing to call Rasheed

Brown because "Brown's purported certification, which [Turner] submitted with his PCR petition,

d[id] not adequately support [his]claim [that] Rasheed Brown would have provided rebuttal

testimony to the State's theory that [Turner] murdered the victim in retaliation for the shooting of

Brown."   Id. at *2.   The Appellate Division found that Fatimah Turner, who "said that [Turner]

came home every night . . , is not a true alibi witness - rather, she merely would have provided

---

[4] The reasonable probability standard is less demanding than the preponderance of the evidence standard.   See Nix v. Whiteside, 475 U.S. 157, 175 (1986); Baker v. Barbo, 177 F.3d 149, 154 (3d Cir. 1999).

testimony about [Turner's] daily routine." Id. at *2-*3. Although Turner "submitted [a] purported certification[] from Glory Gonzalez, who said she and defendant were together at the time of the murder and that she was prepared to testify at trial but was never contacted," id. at 2, the Appellate Division found that counsel was not deficient in failing to call Gonzalez because Turner "did not say in his certification that he provided the names and addresses of the . . . alleged exculpatory and alibi witnesses to trial counsel prior to trial." Id. at *3. The Appellate Division found that counsel was not deficient in failing to call Altariq Highsmith, Wanda Crawford, Mehmet Zor and Jessica Lyons because "there are no certifications from Highsmith, Crawford, Zor or Lyons indicating they would provide exculpatory or alibi evidence." Id. With respect to the remaining ineffective assistance of counsel claims, the Appellate Division affirmed substantially for the reasons expressed by the trial judge.

In an oral opinion, the trial court considered and rejected each alleged claim of deficient performance. The court found that counsel was not deficient in failing to move to suppress the statements of the three eyewitnesses due to inconsistencies because these witnesses were competent to testify and "[i]nconsistencies in witnesses' statements don't warrant a suppression of the statements, they don't go to competency to testify, and they certainly don't render testimony inadmissible." (ECF No. 12-31 at 5.) The trial court found that counsel was not deficient in failing to cross-examine these witnesses about inconsistencies because defense counsel "used one tactic or another, one strategy or another in examining the witness[es] and to - to criticize the cross-examination in - on any particular point without more specificity and a suggestion of what the consequences of that specifically were, is really limited to an area where we are truly being to asked to second guess [the strategy of counsel a]nd I've just indicated that that's not the standard

18

that the court permits."   (ECF No. 12-31 at 6.)   The trial court rejected the claim that counsel was deficient in failing to elicit testimony from the eyewitnesses Glover, Redding and Woodson concerning the absence of Turner in the videotape on the ground that the video only recorded a limited area of the gas station and the shooting was not within the range of the video.   Id. at 6-7. The trial court found that counsel was not deficient in failing to cross-examine Detective Wallace on why he did not pursue the lead from Altariq Highsmith in locating a potential suspect on the ground that this strategy "doesn't appear to be consistent with the theory that the defense set forth." Id. at 8.

The trial judge found that counsel was not deficient in failing to object when the prosecutor asked Glover why he did not go to the police after the murder took place because it was obvious that Glover would have implicated himself if he had gone to the police.   (ECF No. 12-31 at 9.) The trial court rejected the claim that counsel was deficient in failing to visit Turner more than once and failing to investigate on the ground that "[n]o specific subject of investigation is claimed by the petitioner to have been neglected or omitted by trial counsel."   Id. at 9-10.   The trial judge rejected the claim that counsel was deficient in failing to convey the State's plea offer to Turner on the ground that the prosecutor filed a certification averring that the State did not make a plea offer.   Id. at 10.   The trial court found that counsel's failure to present a gang expert was not deficient because Turner did not explain how such testimony would help his case, he did not explain how an expert could be expected to know whether or not Turner was in fact a gang member, and the "claim doesn't appear to have any basis ."   Id. at 10-11.   The trial court found that counsel was not deficient in failing to object to the prosecutor's references to the Crips and the Bloods because "[t]he gang references were practically inextricable from the fact context of this trial."

19

Id. at 11.   The trial court rejected the claim that counsel was ineffective in questioning Detective Wallace about gangs in the housing project area mentioned by defense witness Miles because this was trial strategy where "[t]he testimony, which is the subject of the petitioner's complaint was elicited by his trial counsel presumably to demonstrate K[aso]n Miles' familiarity with the area - of the area and with Jihad Glover."   Id.   The trial court further found that trial counsel was not ineffective in failing to object to the conversation between the judge and the prosecutor about the prosecutor's objection to the accomplice testimony charge where the charge requested by defense counsel was given and the summary of the conversation in chambers between the judge and the prosecutor was placed on the record.   Id.   at 11-12.   The trial court rejected the claim that counsel was ineffective because he slept through critical testimony and failed to object when juror(s) fell asleep on the ground that there was no factual basis for these allegations.   Id. at 13. Finally, the trial court found that Turner had not shown that counsel was deficient in failing to consult with Turner during jury selection because there was no allegation that the jury selection was unsatisfactory or prejudicial.

The New Jersey courts used the standard set forth in Strickland.   Thus, the New Jersey courts' adjudication of Turner's ineffective assistance claims was not contrary to Strickland.   In addition, Turner has not shown that the adjudication of Turner's ineffective assistance of counsel claims was an unreasonable application of that standard.   The New Jersey courts' findings that counsel's performance was not unreasonable under prevailing professional norms and that counsel's actions were strategic are consistent with Strickland.   Most importantly, in light of the eyewitness identifications of Turner by Redding, Woodson and Glover, who knew him and were in the van with him before and after the shooting, this Court finds that Turner has failed to show

that there is a reasonable probability that the jury would have acquitted him, but for counsel's alleged deficiencies.   Because Turner has not shown that the New Jersey courts' adjudication of his Sixth Amendment claims "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement," he is not entitled to habeas relief based on ineffective assistance of counsel.   Davis v. Ayala, 135 S.Ct. 2187, 2199 (2015) (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)).

**F.      Ineffective Assistance of Post-Conviction Relief Counsel (Grounds Seven-Nine)**

Turner argues in Grounds Seven, Eight and Nine that the attorney who represented him in his post-conviction relief petition was ineffective because he failed to address all the legal issues Turner raised, he failed to thoroughly investigate, and he failed to adequately prepare for and to conduct oral argument.   The problem with these claims is that the AEDPA provides that "the ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief [under § 2254(a)]."   28 U.S.C. § 2254(i).   "[M]ost naturally read, § 2254(i) prohibits a court from granting substantive habeas relief on the basis of a lawyer's ineffectiveness in post-conviction proceedings."   Martel v. Clair, 132 S. Ct. 1276, 1287 n.3 (2012); see also Martinez v. Ryan, 132 S.Ct. 1309, 1320 (2012).   Thus, Turner's arguments grounded in the ineffectiveness of his counsel during post-conviction proceedings are not cognizable as a matter of law.   See 28 U.S.C. § 2254(i); see also Stevens v. Epps, 618 F.3d 489, 502 (6th Cir. 2010) ("Ineffectiveness of post-conviction counsel cannot be the grounds for federal habeas relief"); Post v. Bradshaw, 422 F.3d 419, 423 (6th Cir. 2005) (petitioner's motion for relief from judgment based on post-conviction counsel's failure to pursue discovery was not permitted

under § 2254(i) because it was grounded in claim of ineffective representation during the federal post-conviction review).

**G.      Denial of Evidentiary Hearing (Ground Nine)**

In Ground Nine, Turner asserts that "the trial court committed reversible error when it denied defendant his right to represent the truth of the record and an evidentiary hearing."   (ECF No. 1 at 31.)   As factual support, Turner asserts that he twice tried to address the court himself during the argument of his post-conviction relief petition, but the trial court did not allow him to do so and, as a result, he was not able to correct what the judge was saying.   As stated above, this Court lacks jurisdiction over claims that do not assert a violation of federal rights.   See, e.g., Engle, 456 U.S. at 119-120; 28 U.S.C. § 2254(a).   Because Ground Nine does not assert a federal claim, this Court lacks jurisdiction over it.   Id.

### IV.   Certificate of Appealability

Turner has not made a substantial showing of the denial of a constitutional right. Therefore, no certificate of appealability will issue pursuant to 28 U.S.C. § 2253(c)(1)(B).   See Fed. R. App. P. 22(b)(1); 3d Cir. L.A.R. 22.2.

### V.   CONCLUSION

This Court denies the Petition with prejudice and denies a certificate of appealability.


 s/ Jerome B. Simandle
**JEROME B. SIMADLE**
**Chief Judge**


Dated: **August 31, 2015**

22